[J-16-2022] [MO: Donohue, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| SYNTHES USA HQ, INC., | : | No. 11 MAP 2021 |
| | : | |
| Appellee | : | Appeal from the Order of |
| | : | Commonwealth Court at No. 108 FR |
| | : | 2016 dated July 24, 2020, Judgment |
| v. | : | entered January 21, 2021, reversing |
| | : | the decision of the PA Board of |
| | : | Finance and Revenue at No. |
| COMMONWEALTH OF PENNSYLVANIA, | : | 1409195 dated January 13, 2016 |
| | : | and remanding. |
| Appellant | : | |
| | : | ARGUED: March 10, 2022 |

## CONCURRING OPINION

**CHIEF JUSTICE TODD**                          **DECIDED: February 22, 2023**

I join the introduction and Part II of the majority opinion. With respect to Part I, however, while I agree with broad aspects of the majority's reasoning, ultimately I concur in the result.

The issue resolved by the majority in Part I is one of authorization, *i.e.*, whether the Commonwealth Attorney's Act ("CAA") authorizes the Office of the Attorney General ("OAG") to represent the Commonwealth separately from the Department of Revenue in this appeal, which challenges the method of allocating sales of services under the Tax Reform Code of 1971. The majority concludes that the OAG, "as an independently elected, constitutional officer, is authorized by the CAA to represent the Commonwealth

separately from the Department on appeals from the Commonwealth Court generally," and can do so here. Majority Opinion at 29. I agree with this conclusion.[1]

The majority, however, does not limit its discussion to the statutory authorization inquiry, but finds that this substantive legal issue calls for a detailed consideration of the Rules of Professional Conduct. The majority finds that the OAG may assert a litigation position contrary to that espoused by the government agency under the CAA, but must manage conflicts of interest under the dual-client conduct rules, perceiving the agency and the Commonwealth to be separate clients. Majority Opinion at 29-32. The majority also holds that the OAG has an obligation under our professional conduct rules, not under the CAA, to advise the Department of Revenue of its conflicting interpretation of the tax code to enable the Department to trigger the supersession process under Section 303 of the CAA. Majority Opinion at 31-32. In essence, the majority uses the Rules of Professional Conduct to fill in purported statutory gaps in the CAA.

Respectfully, in my view, the professional responsibilities of the OAG are outside the scope of our grant of allocatur, were not meaningfully briefed by the parties,[2] and are unnecessary to the disposition of this appeal. Of course, under our state charter, the Attorney General must be a member of the Pennsylvania bar, and, thus, must comply with our professional conduct rules. Pa. Const. art. IV, § 5. However, the Rules of

---

[1] I further agree with the majority that the OAG has standing, as the Commonwealth is aggrieved by the Commonwealth Court's order remanding the case for the Board of Finance and Revenue to issue a tax refund. *Id.*

[2] In a brief response to a concurring opinion below, which suggested that the relationship between the OAG and the Department of Revenue is akin to a private attorney and client, the OAG cites Paragraph 17 of the Preamble and Scope of the Rules of Professional Conduct, which discusses ethical obligations of government attorneys. Brief for Appellant at 27-28. In a footnote in its brief to this Court, the Department of Revenue disputed the OAG's interpretation in that regard, citing additional conduct rules. Brief for Appellee at 30 n.18. Neither party, however, suggests or implies that the OAG's ethical duties under the conduct rules are a governing consideration in interpreting the CAA.

Professional Conduct do not have the effect of substantive law, and, instead, provide a framework for the ethical practice of law and govern disciplinary proceedings. *See* Pa.R.P.C. Preamble & Scope, ¶ 19 ("nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra disciplinary consequences of violating such a duty"); *id.* ("The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies."); *id.* at ¶15 ("The Rules simply provide a framework for the ethical practice of law."); *In re Estate of Pedrick*, 482 A.2d 215, 217 (Pa. 1984) (explaining that the prior Code of Professional Responsibility does not have the force of substantive law). Because there is no issue or allegation of professional misconduct in this tax appeal, I would leave for another day the ethical implications of the OAG's presentation of a litigation posture contrary to that asserted by a government agency.

Rather, I would resolve this appeal exclusively on the CAA and its express authorization of the OAG to participate in matters such as this one. To facilitate a better understanding of this statute, I observe, as does the majority, that, under the Pennsylvania Constitution, the Attorney General is designated as the "chief law officer" for the Commonwealth, accountable directly to the Pennsylvania voters, and that the Attorney General "shall exercise such powers and perform such duties as may be imposed by law." Pa. Const. art. IV, § 4.1.

Consistent with the *sui generis* role of the OAG and its constitutional origin, the CAA provides that the OAG is authorized to represent the Executive Branch, but is also independent therefrom. Section 204(c) of the CAA provides that "[t]he Attorney General shall represent the Commonwealth and all Commonwealth agencies . . . in any action brought by or against the Commonwealth or its agencies, and may intervene in any other action . . . ." 71 P.S. § 732-204(c).

Germane to this appeal, Sections 303 and 403 of the CAA address the OAG's representation of the Commonwealth.[3] These sections allow the Governor or independent agency head to request that the agency's General Counsel supersede the Attorney General and represent the agency. 71 P.S. §§ 732-303(a), 732-403(a). If the Attorney General refuses the request, the General Counsel can intervene as a matter of right to represent "the Governor and his interests as Chief Executive Officer of the Commonwealth and its Executive Department." *Id.* However, the CAA, in such circumstances, provides expressly that the "Attorney General shall at all times continue to represent the Commonwealth." *Id.*

---

[3] The text of Section 303, entitled "Supersession and intervention," provides in full as follows:

> (a) Representation of agency by General Counsel. -- Whenever any action is brought by or against any executive branch agency, the Governor or other executive branch official, the Governor may request in writing, setting forth his reasons, the Attorney General to authorize the General Counsel to supersede the Attorney General and represent the agency, the Governor or other executive branch official.

> (b) Intervention by General Counsel. -- If the Attorney General does not grant the request, the Governor may authorize the General Counsel to intervene in the litigation. Such intervention shall be a matter of right and when exercised, confer upon the General Counsel the obligation to represent the Governor and his interests as Chief Executive Officer of the Commonwealth and its Executive Department. The Attorney General shall at all times continue to represent the Commonwealth.

71 P.S. § 732-303(a). Section 403 provides functionally identical language for independent agencies, empowering the head of an independent agency to request supersession and intervention by the agency's counsel in "action[s] brought by or against any independent agency or independent agency official." 71 P.S. § 732-403.

Thus, the CAA's supersession process ensures that both the OAG and the Governor/agency executive have a vehicle by which to present their independent legal positions to Pennsylvania courts in litigation commenced against any agency or executive branch official. Our courts benefit from robust advocacy, as the free exchange of ideas and legal theories facilitate the resolution of cases. Here, however, the statutory supersession process was not directly followed, as the Department of Revenue, via the Governor, did not request the OAG to grant supersession.

Nevertheless, the majority concludes, appropriately in my view, "a result that conformed to the statute was achieved as the Commonwealth Court allowed the agency's intervention, and the OAG continued to represent the Commonwealth." Majority Opinion at 36. Under these circumstances, where the agency was afforded its right of intervention by the General Counsel and the OAG continued to represent the Commonwealth consistent with Section 303 of the CAA, in my view, we should not expand our focus to address the OAG's ethical duties under the Rules of Professional Conduct, which have potential disciplinary ramifications.[4] *See* Pa.R.P.C. Preamble & Scope, ¶ 18 ("Failure to comply with an obligation or prohibition imposed by a Rule is a basis for invoking the disciplinary process."). Although the majority certainly does not suggest or imply that the OAG should be referred to the Disciplinary Board for the institution of a disciplinary

---

[4] The majority's discernment of a duty on the part of the OAG to notify the relevant government agency of its assertion of an inconsistent litigation posture is certainly logical, for if the agency is unaware of the OAG's contrary litigation position, it has no reason to initiate the supersession procedure in Section 303, rendering the entire statutory process ineffective. My disagreement lies only in the majority's reliance upon our professional conduct rules to create that substantive duty when those rules do not have the effect of substantive law.

proceeding, examination of the OAG's professional responsibilities under our conduct rules has no place in this tax appeal.[5]

Accordingly, as the OAG's participation in this appeal was authorized by the CAA, I concur in the result reached by the majority in Part I of its opinion.

---

[5] The parties dispute whether the OAG provided sufficient notice to the Department of Revenue regarding the OAG's contrary litigation posture, and the majority makes no conclusions in this regard.